Good morning, Mr. Chief Judge, and may it please the Court. Elbert Lin on behalf of the State. The District Court should be reversed for two independent reasons. The first, for failing to properly defer to the factual findings of the State Court, and the second, for failing, in the alternative, to properly defer to the legal conclusions of the State Court, as required by AEDPA. The primary problem is that, after first conceding that there is no finding in the State Court record that the victim here, Mr. Zim, even made the statement at issue, the District Court literally altered one of the State Court's findings to support its judgment. And what happened here is the following. First, after the Magistrate Judge recommended that the District Court deny relief, the District Court Judge here conceded that there is no finding in the State Court record that Mr. Zim made the statement. However, instead of denying relief, the District Court decided to schedule an evidentiary hearing to make, and I quote, independent factual determinations. However, after realizing that that is forbidden by Cullen v. Pinholster, the District Court Judge took another look at the State Court decision and purported to find, after all, that there is a State Court finding that could support relief here. And what he said was that, although the State Court did not find specifically that Mr. Zim made the statement in question, what the State Court found was that the prosecutor had admitted to hearing that statement and that he had admitted it to Mr. Watkins' trial counsel. And he cited as support, quote, the court finds that at some time after the trial of this matter, trial counsel was told by the prosecutor, and that's in brackets, that Mr. Zim said he was not afraid at the time of the incident at issue. The problem is that the critical words that underlie the District Court's judgment by the prosecutor are not actually in the State Court decision. All it says is that the court finds that trial counsel was told that Mr. Zim said he was not afraid at the time of the incident at issue. And critically here, Mr. Watkins barely even attempts to defend what the District Court did. Instead, what he argues vigorously in his brief here in this court is that who told the trial counsel is irrelevant and is, quote, of no moment. But who told the trial counsel is, in fact, central. It's not just relevant. It's central to the District Court's judge's judgment here. Because again- It wasn't the statement reported by the prosecutor also consistent with the prosecutor's observation as opposed to being told by Zimmon. Maybe he drew the conclusion he wasn't sure the guy was afraid. And after the fact and assessing it all, he could have said as an accommodation to the other lawyer in a subsequent proceeding, I'm not sure he was afraid. But he didn't say in that statement after consulting the note that Zimmon said he wasn't afraid. It could have also been just an observation like a juror would make an observation. That's absolutely correct, Your Honor. And if you look at the record, what's clear here, and even trial counsel conceded in the state habeas proceeding that while the word fear may have some sort of common sense meaning, the meaning of fear as a legal matter could very well be something that a lay person has a question about. And in fact, some courts have said, and just as an example, there's an Alaska Court of Appeals case where they say, the word fear does not refer to fright, dread, intimidation, panic, or terror. Rather, a person is placed in fear of imminent injury if the person reasonably perceives or understands the threat of imminent injury. Yeah, but that's irrelevant. The question in this case is, number one, whether there's evidence that Mr. Zimmon said he wasn't in fear before trial so as to require disclosure under Brady. And it seems to me the prosecutor did allow how he had a discussion with Zimmon saying that I can't prosecute this unless there is a fear element, and I want to explain that to you. So if you weren't in fear, we're not going ahead. And apparently they had that dialogue about the nature of the offense. And then Zimmon takes a stand and does say he was fear. That's correct, Your Honor. The meaning of fear relates to the conversation that the prosecutor had with Mr. Zimmon. It's undisputed that that conversation took place. But the question here is, I would slightly rephrase it. First and foremost, was there a finding in the state court decision consistent with what the district court claims there was? And then furthermore, if- Well, the state court made a passive finding in the first sentence that it doesn't help too much. But then the very second sentence, the state court did say the prosecutor had this discussion with Mr. Zimmon about the element of fear. That's correct. The other thing that's important about that finding, which we point out in our briefs, is at the very end of it, the state court refers to the statement in question as an alleged statement in his findings of fact. And the word alleged, as this court knows, is not a word that we use lightly in the legal realm as lawyers and judges, or even lay people, reporters who report on legal matters. The word alleged has a very specific meaning that is intended to avoid endorsing a particular fact or version of the truth. Well, I thought that a good deal of your argument rested on your interpretation of this first sentence that's in the passive void. It does. All right. Well, let's talk about that sentence. We have the public defender coming in and testifying at the state habeas proceeding. And although the public defender has varying testimony on what exactly was said, he never varies from the fact that the prosecutor, Mr. Zim, told him that, does he? There's not a single suggestion that someone other than Mr. Zim told him. The record reflects, yes, I think that's a fair characterization. Okay. So then we have, we know from that that there is in fact a finding, because that's the only evidence that's in front, they can't make a finding about Joe Schmoe that we've never heard of. The only evidence in front of the state habeas court is that Mr. Zim made the statement, or that Brian Parsons, the prosecutor, because that's the only person that he talks about making the statement. Now, he varies on what Brian Parsons, the prosecutor, said to him, but he's absolutely clear that Brian Parsons is the one that said it. And Brian Parsons is one of the prosecutors in the state habeas case. He doesn't stand up and say he didn't make it, does he? Well, Mr. Parsons was never called as a witness. Well, I know, but he's one of his colleagues who's doing the whole thing, he's there. The fact that, the question here, though, is the state court, the state court is the one who observed the trial court testimony. Right, I know, and the state court, after observing it and only hearing that Brian Parsons said it, made, you know, used the subjunctive, okay, that wasn't the best way to say it. But I don't think you can draw from this record any ambiguity that Brian Parsons said it. So then you go to the second sentence, and that was what you were discussing earlier with Judge Niemeyer, and whether this business about saying that Brian Parsons' escort discussed with Mr. Zim the definition of fear as applied to the statements at issue, and that Mr. Parsons informed Mr. Zim that the element of fear did not exist, and that the case could not exist, the case could not be proven at trial. That's a finding. Right? Yes, Your Honor. There's no doubt about that. That's correct. Okay, now whatever else, however else that is said, that is the finding of the state court. Why isn't that sufficient in and of itself to constitute Brady material that he should have revealed? The finding that there was a conversation about the meaning of the word fear. And that if the element of fear did not exist, then the case could not be proven at trial. Well, I think that while that finds... It might not have won the day, but it might have. This is a really close case. All that that finding reflects, Your Honor, with respect, is that the prosecutor had a conversation about the legal standard that is at issue in the case. And that if you don't meet this legal standard, this case can't go to trial. That's correct. And I think it's... Even the trial counsel conceded at the habeas hearing that that's something that would be perfectly legitimate for counsel to be informing the witness or the state here to be informing the victim that these are the factors that are relevant and must be met to prove this crime. I understand your position, but it seems to me that if the witness comes to you and says, I'm not sure I can establish one of these elements. Take some other elements. And you say, well, you can't establish that element. This case can't go to trial. We might as well all go home. And maybe that's not improper, but maybe it does have to be then reported to the other side so that they can cross-examine on it and determine what exactly, how exactly important that is. Yes, Your Honor. That's what Brady's all about. The second part of our argument, so the first is that we don't believe this factual finding was there. But even if this court were to conclude that the district court properly read the state court findings, we think in the alternative that the district court then did not properly defer to the legal determination of the state court. So again, assuming that the state court found that the statement occurred, whether it was by admission or however else we read the factual findings, the state court still concluded that there was no Brady violation. And based on the factors, the only reason that would be apparent for the state court to have done so is the conclusion that the statement was not material. Because if we're assuming that the statement was made, that the prosecutor had the statement and it wasn't disclosed, the remaining factor is materiality. Okay, so why don't you talk about the conviction in the course of the trial. Yes. What was the crime? The crime was robbery in the second degree. Attempted robbery in the second degree, that's right. And did the defendant testify? The defendant did not testify. Did the defendant have a weapon? No, the defendant did not have, well, it was not, there was no testimony that the defendant had a weapon. And then wasn't the argument by the defendant that this was all a mistake and he was just coming back that he'd been, will you tell me, you know the record. Yes, Your Honor, I mean the argument, the argument as my friend here explains, there were two grounds on which he put up a defense. And the first was that there was no identification by the state of any property that Mr. Watkins attempted to obtain. And the second was that there was not enough proof on this question of fear or to satisfy the assault element, which is how they put it in the trial court. So the question I… The evidence about fear was key to the defense. That's correct. The evidence about fear was a critical question below. But again, I think the key point to remember here is that we are here in federal court under AEDPA. And the question of material… So what we have is essentially a double question of reasonableness. How many people testified to fear? Just Zinman or the other two? Mr. Zim testified directly to fear. One of his employees testified to seeing his facial expression change to a more serious and concerned expression when Mr. Watkins had asked, did you press the button? But the other thing that's important to remember here is… And didn't the trial judge say that this was a close call? He did say this was a close call. But the other important thing to remember here is, again, because we're here under AEDPA review, the question is whether the state court was unreasonable in concluding that there was a lack of materiality. And materiality is whether there was a reasonable probability that the evidence would have made a difference or that it would undermine confidence in the outcome. And this conversation that Judge Niemeyer was talking about before, I think it's important to remember that, that the state court here could reasonably have concluded that even if this statement was made, it was made in the context of this conversation. And the statement could very well have been, I'm not sure I was afraid… How afraid is afraid for purposes… Essentially, that's the question. How afraid is afraid for purposes of this statute? And that's everything that the prosecutor says is consistent with that. That we had a conversation about what does it mean to be in fear? Because it could very well be that I wasn't shaking, I didn't have an adrenaline boost, I didn't feel terrified. But that could still be enough fear under the statute. And the other thing to remember is that the state court could reasonably have considered the fact that the state did not put into evidence the statements that were made by Mr. Zim to the police at the time of the incident. There were detectives who happened to be on the street outside of the pharmacy. They came immediately over and took statements from the witnesses and the victim. If this statement, assuming it existed, had been introduced, the state could… Did the state put them in below? No, we didn't. Well, I don't know that that proves anything. Well, again, I think the question is… Because you have two bad lawyers, I don't know what else it proves. The question is whether this would have made a difference. And so we're in this hypothetical world where it was the statement, again, assuming it existed, disclosed and admitted. Okay, we have a defendant here, he never brandished a weapon, right? He didn't have a knife, he didn't have a gun. There is no evidence that he brandished a weapon. He didn't have any of that. He never expressly threatened bodily injury. Is that correct? There is no express statement of that. He asked, did you press the button? And he vigorously disputed from the open statement on. He asked for a direct verdict. The trial judge said twice it was really a close case on the directed verdict. Yes. So it seems to me that in the context of that case and the way that trial went on, that the element of fear in any evidence with respect to the prosecutor's discussion with the principal witness for the state with respect to fear was material. I understand, Your Honor. Our response would be the state doesn't necessarily dispute. We don't dispute that this statement could have made a difference. We don't necessarily even dispute that as a de novo matter, the state court might have been incorrect because it might have been incorrect, again, in this hypothetical world because it was a close case. The question is, under AEDPA, right, is it unreasonable for a state court to have found, again, assuming we're in the alternative argument that the statement existed, that there was a sufficient finding of fact to have rejected the claim of a Brady violation? Thank you. I'll reserve the remainder of my time. All right. Thank you, Mr. Lynn. Mr. Hassam? Good morning, Mr. Chief Judge. May it please the Court. Mike Hissom on behalf of Steve Watkins. I want to begin with speaking on materiality where Mr. Lynn finished his argument. What is highly unusual about this case is that it's not mere impeachment. The Brady material issue is not mere impeachment evidence going to some collateral credibility issue or some side issue in terms of the witness' credibility as to a certain set of facts. It's impeachment of the key witness, the only key witness, on a subjective and hotly contested element of the crime. Well, the only key witness. It's not the only witness. It may be a key witness, but it's not the only witness on that issue. Chief Judge Traxler, given that the element requires the witness himself to have been placed, the victim, to have been placed in fear of bodily injury, and that's the way the State tried the case. The jury was instructed, was Mr. Zim placed in fear of bodily injury? The only other evidence that was offered as to these other employees who were in the pharmacy was to say that one of the witnesses, Ms. Holland, testified that Mr. Zim's demeanor changed. But she couldn't, the only person who could directly testify as to what Mr. Zim felt was Mr. Zim. Whether or not he was placed, not just in general fear, but in fear of bodily injury. And so the State mentions in their brief, for instance, the other evidence that Mr. Zim was aware of pharmacy robberies in the area, in the Beckley area. That he was aware that pharmacies were targets for robberies. That's not the type of fear that the jury was instructed on that they had to find. It's not a general awareness of robberies, or that pharmacies may be a target for robberies. It's that Mr. Zim was in fear of bodily injury, and he was the key witness on that. And that was the entire defense, as Judge Moss indicated. That was the defense that was presented. The cross-examination of Mr. Zim, which was very brief by trial counsel, focused on, was there a threat? Was there a weapon brandished? Did Mr. Watkins indicate to you, Mr. Zim, that he was going to hurt you? The answer to all those was no. And it ended with the question of what happened when Mr. And to set back onto the facts here, it's a very brief encounter. Mr. Watkins enters the pharmacy. He has a mask on. He has a hard hat or a helmet on. He mumbles something. There are three people in the store, the three employees of the pharmacy. Mr. Zim, after Mr. Watkins mumbles something that he can't understand, Mr. Zim approaches Mr. Watkins and says, excuse me, I can't hear you. He still can't understand Mr. Watkins, so he approaches him closer. He says, excuse me, I can't hear you. He asks him a third time to repeat his statement, at which point he understands that Mr. Watkins is asking, did you press the button? Mr. Zim testifies he wasn't sure what to do, but he says yes, even though he hadn't. He says yes. And at that point, Mr. Watkins bolts from the store. He jets from the store in the words of one of the other state witnesses. Mr. Zim follows him out of the store. And Ms. Holland, or Ms. Lang-Stennett, I'm sorry, Wendy Lang-Stennett, also follows Mr. Watkins out of the store with Mr. Zim. Ms. Holland remains in the store. They come back in and they say call 911. They flag down a police cruiser. Where the cross-examination of Mr. Zim ends was the natural point, given what trial counsel had to work with, which was, you pursued him out of the store. You didn't barricade yourself. You didn't hide behind the counter. You pursued him out of the store. The natural point to go next, had he received disclosure of the braiding material, would have been to say, now, Mr. Zim, you weren't really afraid. Is the question how he felt after the person had run out of the store, is the question how he felt when he was approached by the person under these circumstances? I think it's how he felt when he was approached, Your Honor. Right. But even then, the discussion that he had with Mr. Zim, with Mr. Parsons, the prosecutor, would have been critical impeachment. To suggest to the jury on this key element that formed the linchpin of the defense, that he wasn't really in fear of bodily injury. He might have been confused. He might have been slightly alarmed. But was he in fear of bodily injury? And you would have emphasized the facts that he did emphasize. There wasn't a threat. There wasn't a weapon brandish. He pursued Mr. Watkins. He came closer to Mr. Watkins. You would have had him step down from the stand and stand next to Mr. Watkins and show their difference in their size. Mr. Zim was much larger. And this is in the record. Mr. Zim was much larger than Mr. Watkins. And you would have had him sit back down, and you would have asked him about his conversation with Mr. Parsons and how Mr. Parsons told him, well, here we are a week before trial, and if you weren't fearful, then we don't have a case. That would have been the critical impeachment that the jury, that would have given them a crack to argue to the jury that these other witnesses, Ms. Holland, Ms. Lang-Stennett, they can't testify as to this element. The closing argument would have been Mr. Zim is the witness, and Mr. Zim himself expressed doubt. He expressed reluctance to express fear. And going back to this factual finding, Judge Motz, not only was Mr. Parsons the lawyer who represented the state in the omnibus habeas hearing, he had submitted a brief, which was very strangely written in the first person, to the state habeas court, and it's at Joint Appendix 303 and going on to 304. And he says, I, Mr. Parsons, I recall having a conversation with Mr. Zim about the definition of the word fear as it applied to the legal elements requiring proof. He says Mr. Zim did not state that he was, quote, never afraid, end quote, but rather he sought a better understanding of what fear meant. And then he puts in parentheses a very critical piece. He puts in parentheses, the court should understand that a certain amount of bravado existed as to the relationship between counsel and Mr. Zim and a reluctance to express fear months after an incident is natural between two men. With that statement. Yeah, but see, that's exactly where the state court made its finding. The district court in this case suggested that Zim told the prosecutor he was not afraid. And the record doesn't support that. What the prosecutor said subsequently, he said, and he read from a note, he said Mr. Zim may not have been in fear, which is consistent that he could have observed that as opposed to being told that. The second reason for making that importance is you look at the state court's finding on page, I'm J.A. 213, it says the court concludes that the state's alleged failure to inform defense counsel of the conversation between Mr. Parsons and Zim regarding the requirement of fear did not violate Brady. Next page. Additionally, the court concludes that Mr. Parsons' statements to Mr. Zim with regard to element of fear were accurate way to describe the elemental requirements to a lay person and there's no evidence that Mr. Parsons suggested or improperly influenced Mr. Zim's testimony. So the state court considered the only statement attributable or only knowledge attributable to Parsons was that he had this discussion about the element of fear and was never told by Zim and I wasn't afraid. The first statement is that passive statement that someone had said and that allusion I think is to what Parsons had told Adkins in another proceeding. So I don't see at all you can draw the conclusion that Zinman told Parsons either from the state finding or on the evidence that he told before trial or during trial, Zinman told Parsons that I was not afraid. Your Honor, Judge Niemeyer, in that section of... That would be exculpatory, that would be subject to Brady. But I think you have to read the finding that appears at page 211 in light of the interpretation of that finding that the state court made on page 213 and 214. Your Honor, the record that was before the state court only allowed of the interpretation, the factual finding, it only allowed of the factual finding that that conversation between Mr. Zim, the witness, and Mr. Parsons had taken place pre-trial and... This conversation clearly did. They talked about the elements. But there was a statement, this arose from a statement made by the prosecutor after the trial. And he made this statement that basically, he didn't talk about what Zinman said. He said, I'm not sure Zinman was afraid. And that to me is consistent with the prosecutor just simply gratuitously... Commenting on the outcome of the proceeding. Yeah, saying he may not have been afraid, that's an observation he made. But that's a lot different from a statement made by Zinman to the prosecutor, I was not afraid, pre-trial, and therefore would have disclosed Brady. And I agree, Judge Niemeyer, that that is where it arose. This conversation and another proceeding months later or weeks later, that is where it arose. I think what's critical is what happened in the state habeas proceedings after that. That's where it arose. Except in the state proceedings, the testimony came out, well, what did the two attorneys say to each other subsequently? And he said, well, I made a note of that. And he had the note there and read it, and it was totally passive. It said nothing about Zinman saying I was not afraid. And I agree, Your Honor. And as to the conversation in that courtroom that spurred this issue, I agree. But Mr. Parson's representation of the state in the habeas proceeding, in the statements made, for instance, in his own brief written in the first person... He never said the guy said, I'm not afraid. Your Honor, but the statement on page 304 of the joint appendix that a certain bravado existed. Again, he's describing his pretrial conversations. He begins that paragraph with, counsel for the respondent spoke with Mr. Zim on at least two occasions prior to the trial of this matter as a part of the trial preparation process. And the rest of the paragraph, he's describing those pretrial preparation meetings. In the parenthetical portion on JA304, he is saying that Mr. Zim had a reluctance to express fear months after an incident. And he's explaining that it's natural and it was because of the bravado of their relationship. That representation to the court in the first person, to the state habeas court, and this brief is in March of 2010. And in February of 2011, about a year later, they're going to have the state omnibus hearing. And Mr. Parsons is going to appear and represent the state. You have a witness who the prosecutor construes as having some reluctance as a man of being in fear. And he observes that and he explains, well, we're not going to prosecute this unless there is the element of fear. You have to understand that this is what fear amounts to. Is that an exculpatory or type of statement that Brady's going to require disclosure? Yes, Your Honor, in this circumstance, where that is an element of the crime. Yes. Yes. The sentiment never said, is never imputed with the notion that he wasn't afraid. Your Honor, I think on JA3... I saw the statement, I just went and looked at it. Yeah, that is the prosecutor, it's Mr. Parsons, describing the nature of the conversation. And I understand that Mr. Parsons was explaining why the conversation was taking place. And I think that the district court very carefully looked at that issue of this explanation of why... The district court's not entitled to look at it. The district court has to defer to the state court. The state court looked at it. I understand. And the district court has to say, was that an unreasonable finding? In other words, was the state court out of bounds in doing that? And it looks to me like the district court just supplanted itself in the role of the state court. Your Honor, and I certainly understand, and I don't mean to imply that the district court opinion is entitled to any deference. I understand it's reviewed by this court de novo. I offered in the brief as an example of, in our position, the proper interpretation under AEDPA. The deference to the proper standard review, not just acknowledging it in passing, but actually applying it. And I only mentioned that the district court's discussion of the explanation for why the conversation took place does not remove it from the territory of Brady. The fact that a conversation is happening pre-trial in a meeting with the prosecutor, as opposed to a typical law enforcement or case agent interview. The state court construed that whole conversation as an explanation of the elements of the offense with the witness and never concluded that the witness said to the prosecutor during that conversation, I'm not afraid. And the court characterized that on page 211 when it says the conversations relating to the elements of the offense and on 2013 and 14. Correct, Your Honor, and that is the unreasonable application that the district court identified. It's a factual construction, what the nature of the conversation was. Your Honor, there isn't, and what's odd about this case is there's not that contrary factual finding. The state court, there is nowhere in the state court order that the state of West Virginia can identify for this court where the state court makes the direct factual finding that Zim did not express a lack there. He doesn't have to. The court has to evaluate whether Brady was violated. And the court made a finding of fact and then said, with respect to the finding of fact, explaining what it was doing, it says that the failure to inform defense counsel of the conversation between Parsons and Zim, they're talking about the conversation that's at issue here, regarding the requirement of fear, did not violate Brady. Yes, Your Honor, and in that section on 213, that's the legal finding, that it did not violate Brady. No, it describes what the court's understanding of its factual finding was. Sure. Conclusions of law. Exactly, yeah. I mean, it is conclusions of law, Judge Motz, but it's going back to this conversation, and I think it's clear... I know, but the ambiguity on page where the finding of fact is made, there's an ambiguity because you have the first sentence in the passive, which is not attributed to the prosecutor, and then you have the second sentence, which attributes conversations to the prosecutor. And it looks to me that that is resolved pretty clearly in the way that that court, the very court in the very document, interpreted its own finding. Your Honor, except for the second sentence, I think the ambiguity illustrates the lack of the affirmative factual finding that the state is looking for. The second sentence indicating that... They don't need an affirmative finding. It's you that needs it. You're coming in and having... The state court made a factual finding that is a little obtuse, but the court explains its factual finding in a manner which seems to me to be satisfactory, that this was a discussion about the elements of fear, and it's not a Brady violation, ergo. And it's not on... A burden's not on the state to say, now there had to be a disclosure of that conversation. You have to come in and demonstrate that that type of a conversation between an important witness and the prosecutor about the elements of fear constituted Brady. And I think it's a real stretch to take that finding and have the district court conclude that, what it did in this case, that Zinman said to the prosecutor, I was not in fear. And there's no fact to support that. Your Honor, that second sentence of the factual finding on Joint Appendix 211, where Mr. Parsons is discussing the definition of the word fear and explaining that if that element did not exist, then the case could not be proven at trial, only makes sense in the context of a conversation in which Mr. Zim has expressed a lack of fear. And that's the only evidence that was in front of that state... He can come and say, what does fear mean? I mean, you know, I'm a man. I wasn't totally afraid. The question is, how did I react? Explain to me what this element of fear is. And, Your Honor... The prosecutor never attributed to Zinman that he told me I was not afraid. He talked about an expression of fear by the witness, a reluctance. That was in his later statement. And the district... I mean, the state court found that these were discussions about the elements of fear, what was essential to prosecuting. And, Judge Niemeyer, your question there in presuming a statement to the effect of, I'm a man, I wasn't entirely afraid, that highlights the nature of the Brady. To the extent the element... No, no, he didn't say I'm not entirely afraid. No, I'm using the court's hypothetical... Your Honor's hypothetical statement that you asked in the question of, if that's what he said... My point is, we have a statement that's made to... It starts with a statement made to Adkins. After the trial, I'm not sure Zinman was in fear. Then you go back and uncover what was going on, and it said, well, Zinman was concerned about the element of fear. We had this discussion, and I explained to him the essence of fear element in order to prosecute this case. The district court said, that conversation, and that's all that's attributed between Zinman and the prosecutor. That's all the state court found. He said, that conversation does not amount to Brady. And the factual finding that that's the nature of the conversation, and the conclusion, it seems to me, you may not have, you may not have, or I may not have gone the same way, one way or the other, but it's not out of bounds. The state court understood Brady. The state court made findings of fact. They're not out of bounds. They're not unreasonable. Your Honor, I don't think there's any aspect of the factual finding paragraph that allows for any other conclusion, but that Mr. Zim expressed a reluctance to state that he was in fear. And that's exactly what Mr. Parson said in his brief submitted to the state habeas course in the first person, that Mr. Zim had a reluctance to express fear. Whether it was couched in the exact terminology of, I was not afraid, I agree, is not in the state court finding. That was taken all the way up in the state court system and rejected, not just by the trial court, but by upper courts. And now you come to federal court and want the federal court to slap the state court and say they were unreasonable in the way they handled it. Yes, Your Honor. That it was an unreasonable application of Brady in failing to disclose the direct prior inconsistent statement of the key witness on an element of the crime. I see my time's about to expire, Your Honor, if there are no other questions. These are just housekeeping matters primarily. Was the note allegedly made by Mr. Atkins ever admitted at the state omnibus hearing in evidence? It does not appear to be, Mr. Traxler, or Chief Judge Traxler. It's unclear because the transcript of the state habeas hearing refers to exhibits, and there's a checklist that's used in state court proceedings in West Virginia called the Losch checklist. It's indicated as an exhibit, but it's not in the transcript. The note was referred to. I don't see any place in the transcript where the note is moved to be admitted into evidence, but it's not clear. If it's identified, it's part of the record. I believe so, Judge Niemeyer. Well, we always... Because the only way you can review an evidentiary ruling is if you mark it for identification and it's not into evidence. You have to decide whether the court acted properly in rejecting it, and it's been my understanding that if it's marked for identification in the case, it should be part of the record so as the appellate court can review it. I believe so, Your Honor. But I don't see an indication... Did anybody go back and try to find the note? Your Honor, there is a copy of the note. It's attached to the federal habeas petition. It's quoted in the briefs. Is it accurately quoted? I believe so, Your Honor, yes. And that statement's sort of a passive statement that Zinman may not have been in fear. Correct. Another question was this. The district court found that the state court found that the prosecutor had admitted the exculpatory statement, and could you point me to where that is? I mean, I know the district court made the finding. I know where that is, but where does the prosecutor admit that? Most directly, Your Honor, on Joint Appendix 303 and 304 in that brief written in the first person. That brief that was submitted... That's what you would rely on? Yes, sir. I understand. Can I ask you one more question about Judge Traxler's first question to you? Because there's something about when we are looking at cases like this that we can't go beyond, as I understand it, the record before the state habeas court. And is it your position that this... In other words, is there some sort of West Virginia rule that you can, as there sometimes is in Maryland, that you can give the clerk before the proceeding a copy of your exhibit list, and then if the other side doesn't object, everything's in evidence? Is there such a procedure? That procedure happens in practice in West Virginia state court. I'm not sure that it took place here. So we're not positive whether this... I'm not sure it makes any difference, but we're not sure it was in the record part. Is that right? The actual physical note, a one-page piece of paper, Judge Motz, we are not sure that that piece of paper is in the state court record. And what we argued below to the district court was that the contents of the note, to the extent they were testified about, were before the state court. But whether that one piece of paper is technically in the record, it's not clear. Okay, thank you very much. Well, it clearly wasn't in evidence, right? I think so, Your Honor, but the fact that there's an exhibit on the transcript... The normal practice for a note like that is to refresh a person's recollection and not to be substantive evidence. Unless you had some sort of agreement beforehand that there isn't going to be any of these kinds of objections. Sure. And the only reason I'm equivocating Judge Niemeyer is that the one exhibit from the habeas hearing that's reflected on the transcript, I also can't find in the record. And these things sometimes happen in state court in West Virginia. So given that I wasn't there, I just can't state affirmatively what was made in exhibit beforehand or afterwards and what happened in the Circuit Court of Fayette County. Okay, thank you. Thank you. Require? Do you know anything about whether this note is in the record or not? The state's position is, Judge Motz, as you referred to, the Supreme Court of the United States has required that HEDPA review is based on the state court record, and based on what we see, the actual record, our position is that the note was not admitted into it. You don't have anything to add factually? We have nothing further to add factually to what Mr. Hessam said. I just have two very quick points. The first is on the factual point, again, what the state would urge is that this court review the state court decision and there is neither in there a finding of fact that Mr. Zim, the victim, made this alleged statement, nor is there a finding of fact that, as the district court asserts, that the prosecutor admitted anything to trial counsel, and as Judge Niemeyer has pointed out, that makes perfect sense in light of the very sparse record that was before the state court on habeas review. Much has been made about the fact that the prosecutor, what he said in his brief, that brief, there is no admission in that brief that he heard Mr. Zim say he was not afraid or not entirely afraid. In fact, it says Mr. Zim never said he was never afraid. And the other thing that's important to note here, and there's some insinuation in the district court opinion that the prosecutor committed some kind of error by proceeding because in violation of the witness advocate rule, he was not a necessary witness here. There were, by trial counsel's own assertion, other people present in this post-trial conversation. And moreover, Mr. Zim, the man who was alleged to have made this statement about not being in fear, could have been called and never was. There is an absence of evidence in the record, and given what the state court was faced with, we believe that the findings make sense and are entitled to deference. The second point I would make is just in general, again, the state would remind this court respectfully that we are here under AEDPA review, and even if this case is a close case, whether on the factual side or on the legal side, the state court decision is entitled to deference both factually and legally. And if the court has no further questions, we would respectfully submit that the district court judgment should be reversed. Thank you. Thank you. We'll come down and greet counsel and then go on to our next case.
judges: William B. Traxler Jr., Paul V. Niemeyer, Diana Gribbon Motz